PETER AND VALERIE BRADLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bradley v. Commissioner
Docket No. 16847-93
United States Tax Court
T.C. Memo 1995-169; 1995 Tax Ct. Memo LEXIS 163; 69 T.C.M. (CCH) 2400; April 12, 1995, Filed *163 Decision will be entered under Rule 155. Peter and Valerie Bradley, pro se. For respondent: David A. Breen. WHALEN
WHALEN
MEMORANDUM OPINION WHALEN, Judge: Respondent determined the following deficiency in, and addition to, petitioners' 1989 income tax: Addition to Tax Deficiency
Sec. 6662 (a) $ 18,199
$ 3,640
After concessions, the sole issue for decision is whether petitioners are liable for the addition to tax for negligence under section 6662(a), as determined by respondent. All section references are to the Internal Revenue Code, as amended, and in effect for 1989. Petitioners bear the burden of proof in this case. . Rule 142(a), Tax Court Rules of Practice and Procedure. Hereinafter, all Rule references are to the Tax Court Rules of Practice and Procedure. Some of the facts have been stipulated by the parties and are so found. The Stipulation of Facts filed by the parties and the attached exhibits are incorporated herein by this reference. During 1989, petitioners resided in Media, Pennsylvania. Mr. Bradley was employed by Chester High School as a history teacher. Mrs. Bradley was a homemaker. In this opinion, references to "petitioner" are *164 to Mr. Bradley. In the subject notice of deficiency, respondent determined the above tax deficiency, $ 18,199, based upon the following adjustments to petitioners' 1989 return: a. Schedule C gross receipts
$ 17,054 b. Schedule C cost of goods sold
2,127 c. Schedule C rent expense
10,000 d. Schedule C other expenses
2,077 e. Schedule E taxes
5,209 f. Schedule E repairs
7,079 g. Passive loss disallowed in error
(28,372)
h. Capital gains and losses
70,025 i. Itemized deductions, interest
12,260 Total adjustments
97,459 Respondent further determined that the entire underpayment of tax for 1989 was attributable to negligence or disregard of rules or regulations, within the meaning of section 6662(b)(1) and, as a result, that petitioners are liable for the addition to tax under section 6662(a) in the amount of $ 3,640 (i.e., 20 percent of the underpayment of $ 18,199). Prior to trial, the parties filed a Stipulation of Settled Issues in which petitioners agreed to the following adjustments to their income: a. Schedule C gross receipts
$ 17,054 b. Schedule C cost of goods sold
2,127 c. Schedule C rent expense
10,000 d. Schedule C other expenses
1,577 e. Schedule E taxes
-- f. Schedule E repairs
310 g. Passive loss disallowed in error
(28,372)
h. Capital gains and losses
70,025 Total
72,721 *165 The Stipulation of Settled Issues also states as follows: The only remaining issues in this case are whether and to what extent petitioners are entitled to an itemized deduction for interest purportedly paid to Midlantic National Bank and whether and to what extent petitioners are liable for additions to tax under I.R.C. Section 6662(a).
It appears that the interest deduction referred to above is the itemized deduction for interest in the amount of $ 12,260 that was disallowed in the notice of deficiency (item i). The record does not make clear when this adjustment was resolved by the parties but at the start of trial, petitioner stated that the only matter at issue is the addition to tax for negligence. In the Stipulation of Facts filed in this case, the parties stipulate the following: 5. The adjustment to Cost of Goods Sold was made because petitioner deducted a sales tax payment he made to the Commonwealth of Pennsylvania ($ 514.00) and an additional amount ($ 1,608.00) was disallowed for lack of substantiation.
We note that the two amounts referred to in the above-quoted paragraph of the stipulation total $ 2,122, whereas the adjustment to cost of goods *166 sold in the notice of deficiency is $ 2,127, a difference of $ 5. The record does not explain this difference. Petitioner testified at trial about the conduct of his businesses and about the preparation and filing of his joint 1989 return. We found petitioner to be a credible and reliable witness. During 1989, petitioner was involved in several businesses in addition to his primary occupation as a teacher. Although petitioner owned the businesses, his participation in their day-to-day operations was limited. Petitioner relied upon managers to operate his businesses and to prepare the necessary business records. It was petitioner's custom to compile all of his business records, and, at the end of the year, to turn them over to his accountant, Mr. David Hughes, who would then prepare petitioners' income tax return. As of 1989, Mr. Hughes had been petitioners' accountant for more than 20 years. Petitioner retained Mr. Hughes to prepare his taxes for 1989, but as discussed below, this relationship terminated in March 1990. Respondent determined that petitioners were negligent with respect to the underpayment attributable to each item comprising the deficiency determined by respondent *167 in the notice of deficiency. The deficiency is principally attributable to three items. The largest adjustment to petitioners' 1989 return involves a capital gain of $ 70,025 realized from the sale of certain property by a subchapter S corporation, Coastal East Properties, Inc., owned by petitioner. This gain was reported to petitioner on Coastal East's Form 1120-S, Schedule K-1. At some point prior to March 1990, as was his custom, petitioner gave all of Coastal East's records, including the Schedule K-1, to Mr. Hughes. The second largest adjustment to petitioners' 1989 return involves unreported income of $ 17,054 from petitioner's operation of a "Dairy Treat" ice cream stand. Although petitioner operated the Dairy Treat as a sole proprietorship, he did not manage it on a day-to-day basis. Rather, petitioner hired a manager to run the business for him. At the end of each day, the manager would total the day's receipts and enter the amount in a ledger. At the end of each week, the manager would give the ledger and the receipts to petitioner. After reviewing the ledger, petitioner would deposit the week's receipts into a bank account, less a weekly cash draw that he would *168 retain. At the end of the year, petitioner gave the ledger and the deposit slips to Mr. Hughes. Thus, petitioner gave to Mr. Hughes all of the information necessary for Mr. Hughes to properly calculate petitioner's income from the Dairy Treat. The next largest adjustment to petitioners' 1989 return involves a $ 10,000 rent payment by the Dairy Treat proprietorship. The payment was made to petitioner in his capacity as owner of the building in which the Dairy Treat operated. This item is deducted on the Schedule C, Profit or Loss From Business, for the Dairy Treat business but it is not included in petitioner's income. Petitioner testified that he used the money to make the mortgage payment on the Dairy Treat building. Petitioner gave Mr. Hughes the records necessary to properly treat this payment. By March of 1990, petitioner had given all of his business records to Mr. Hughes. However, due to the growing complexity of petitioners' business operations, Mr. Hughes concluded petitioners' tax return was beyond the scope of his expertise. In March 1990, Mr. Hughes terminated his professional relationship with petitioner. After Mr. Hughes' withdrawal, petitioner hired another *169 accountant. The record does not make clear whether the new accountant relied in any way on the work of Mr. Hughes. However, petitioner gave the new accountant all of the records necessary to complete petitioners' return. In preparing petitioners' return, the new accountant made various errors which gave rise to adjustments in the notice of deficiency. In the case of the capital gain reflected on the Schedule K-1 for Coastal East, the new accountant incorrectly reported petitioner's capital gain of $ 68,937 as a capital loss. In the case of petitioner's draw from the Dairy Treat business in the amount of $ 17,054, the accountant relied solely on the deposit slips to calculate Dairy Treat's revenues and failed to take into account the additional revenues shown in the ledger. In the case of the $ 10,000 rent payment, the accountant failed to properly treat this item on petitioners' return. This is also true for the remaining adjustments determined in the notice of deficiency, i.e., the $ 2,127 adjustment to Schedule C Cost of goods sold, the $ 310 adjustment to Schedule E repairs, and the $ 1,577 adjustment to Schedule C other expenses. Respondent determined that the mistakes *170 found in petitioners' 1989 return were due to petitioners' negligence and that petitioners are liable for the addition to tax for negligence pursuant to section 6662(a). Petitioners bear the burden of proving that respondent's determination is erroneous. Rule 142(a); Axelrod v. Commissioner, 56 T.C. 248, 258-259 (1971). Pursuant to section 6662(a) and (b)(1), if any portion of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, the taxpayer is liable for an amount equal to 20 percent of the portion of the underpayment attributable to such negligence or disregard of rules and regulations. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c). Negligence also includes a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Rybak v. Commissioner, 91 T.C. 524, 565 (1988); Neely v. Commissioner, 85 T.C. 934, 947 (1985). A taxpayer can avoid liability for the addition to tax for negligence if he can show that *171 he reasonably relied on the advice of a competent and experienced accountant to prepare his return. Weis v. Commissioner, 94 T.C. 473, 487 (1990); Conlorez Corp. v. Commissioner, 51 T.C. 467, 475 (1968). The taxpayer must also show that he supplied all necessary information to the accountant, and that the error on the return resulted from the accountant's mistake. Pensin v. Commissioner, 59 T.C. 473, 489 (1972); Enoch v. Commissioner, 57 T.C. 781, 803 (1972); see Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978). Petitioner supplied both Mr. Hughes and the accountant who prepared his return with all of his business records. For example, in the case of the Dairy Treat business, petitioner gave his accountant both the daily ledgers and the deposit slips, as well as the records relating to the rent payment. Similarly, petitioner gave his accountant a copy of the Schedule K-1 from Coastal East which clearly shows the capital gain in question. Based upon petitioner's testimony, we find that he supplied to his accountant all *172 of the information necessary to correctly report the items that were the subject of adjustment in the notice of deficiency and that the errors on petitioners' 1989 return were the result of mistakes made by his accountant. We find, therefore, that petitioner made a good faith effort and acted reasonably and prudently in attempting to comply with the provisions of the Internal Revenue Code. Thus, petitioners have shown that they were not negligent with respect to any of the adjustments determined by respondent. For the foregoing reasons, Decision will be entered under Rule 155.