T.C. Memo. 2000-90



UNITED STATES TAX COURT



WILLIAM R. & CAROL ENYART, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4336-98.                    Filed March 14, 2000.



Benjamin R. Cooksey, for petitioners.

Mary Ann Waters, for respondent.



MEMORANDUM OPINION


CHIECHI, Judge:  Respondent determined a deficiency in, and

an accuracy-related penalty under section 6662(a)[1] on, petition-

ers' Federal income tax (tax) for 1992 in the amounts of $88,442

_____

[1]All section references are to the Internal Revenue Code in
effect for the year at issue.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

and $17,688, respectively.

The issues remaining for decision are:

(1) Are petitioners required to include in their taxable income for the year at issue the amount of $300,000 as consideration for the covenant by petitioner William R. Enyart (Mr. Enyart) not to compete with B & L Utility Contractors, Inc. (B&L)?  We hold that they are.

(2) Are petitioners liable for the year at issue for the accuracy-related penalty under section 6662(a)?  We hold that they are.

This case was submitted fully stipulated.  The facts that have been stipulated are so found.

Petitioners resided in South Point, Ohio, at the time the petition was filed.

In January 1981, Mr. Enyart and John Milem, Sr. (Mr. Milem), incorporated B&L, which issued to each of them 50 percent of its common stock.  In August 1983, Mr. Enyart purchased all of Mr. Milem's B&L common stock and became its sole stockholder.

In April 1985, Janet Robinson Griffiths (Ms. Griffiths) purchased 102 shares of B&L common stock.  As a result of a special meeting of B&L's stockholders in July 1988, B&L issued two additional shares of its common stock to Mr. Enyart, thereby making him and Ms. Griffiths equal stockholders of B&L.

From January 1992 through April 1992, B&L experienced a

period of financial hardship that caused its two stockholders, Mr. Enyart and Ms. Griffiths, to undergo a "friendly disagreement" over how to extricate B&L from its financial difficulties. Mr. Enyart and Ms. Griffiths ultimately agreed around June 1992 that Mr. Enyart was to leave B&L.  In order to implement that agreement, Mr. Enyart and B&L entered into a "SALE AND PURCHASE AGREEMENT" (agreement) dated August 17, 1992.  Under that agreement, inter alia, Mr. Enyart agreed to sell, and B&L agreed to buy, all of his B&L common stock for $50,000 payable at the time of B&L's purchase (i.e., redemption) of that stock.  That sale and purchase of Mr. Enyart's B&L common stock was effected in 1992.

Because Ms. Griffiths also wanted Mr. Enyart to enter into a covenant not to compete with B&L, but B&L lacked the funds to pay him cash for such a covenant, the agreement provided in pertinent part:

> [1](b).  ENYART agrees and covenants that he will not directly or indirectly or as an officer or owner of any entity compete with B&L in the bidding for or contracting for work upon any project where the price for work to be performed by either party is Five Hundred Thousand Dollars ($500,000.00) or more for a period of one (1) year from the date of closing, which is effective upon closing, at a price of Three Hundred Thousand Dollars ($300,000.00) in equipment, as further set forth below; and

>    *     *     *     *     *     *     *

> 2(a).  Equipment of the value set forth in 1(b)., above, shall be transferred by B&L to ENYART at closing.  Such equipment shall be selected by ENYART from

the Equipment Listing attached hereto as Exhibit A, and shall be valued for transfer and payment purposes hereunder at One Hundred Fifteen per cent (115%) of the values set forth for the items of equipment selected by ENYART.

(b). All such equipment is presently subject to financing liens, and ENYART agrees to accept the transfer of such equipment subject to such liens. B&L will remain responsible for the payment of all such liens, as now financed, and shall furnish ENYART with releases of lien when payment has been made and such liens are released by the financing institution(s).

(c). If transfer of such equipment, or any part thereof, cannot be effected because of objection by the lending institution(s) or otherwise, then ENYART shall have the use of such equipment, by appropriate lease or other reasonable method, until the financed amounts shall have been paid by B&L and releases of lien secured, at which time the equipment shall be transferred to ENYART.

(d). ENYART agrees that he will maintain at his own cost all insurance required by the lending institution(s) on such equipment, and further agrees that so long as any of such equipment remains titled to B&L he will furnish at his own cost liability insurance with a company acceptable to B&L for the benefit of B&L as to the use of such equipment in minimum amounts equal to those currently in force for B&L's benefit, by the naming of B&L as an additional or named insured on insurance policies held by ENYART or other effective manner. Each such policy shall contain a provision that it may not be canceled for any reason without thirty (30) days' prior written notice to B&L. ENYART shall furnish B&L with written certificates of insurance evidencing the above insurance at all times, containing the above provision. B&L agrees that it will pay one-half (½) the cost of liability insurance in excess of One Million Dollars ($1,000,000.00).

(e). ENYART shall be fully responsible for the payment of all taxes, license fees and similar costs relating to all equipment and other matters hereunder on a timely basis, without contribution by B&L.

(f). B&L presently holds a policy on the life of

Janet R. Griffiths in the face amount of One Million Dollars ($1,000,000.00) and will name the lending institution(s) holding liens on the equipment involved herein as beneficiary(ies) in the amount necessary to pay such liens.

    *        *        *        *        *        *        *

5.  The parties further agree that, they will execute such other and further documents as are reasonably necessary to effect the sales and transfers contemplated herein.

Pursuant to the agreement, Mr. Enyart selected $300,000 worth of certain assets owned by B&L (B&L equipment) as consideration for his covenant not to compete with B&L.  (We shall refer to Mr. Enyart's covenant not to compete with B&L as Mr. Enyart's covenant.)  On August 20, 1992, pursuant to paragraph 5 of the agreement, Mr. Enyart and B&L entered into a "BILL OF SALE AND CONVEYANCE" (bill of sale and conveyance) which effected the transfer of the B&L equipment from B&L to Mr. Enyart.  The bill of sale and conveyance provided in pertinent part:

> FOR VALUE RECEIVED, B & L Utility Contractors, Inc., an Ohio corporation (B&L), hereby BARGAINS, SELLS, CONVEYS, ASSIGNS and TRANSFERS unto William R. Enyart (Enyart) all items of equipment, including but not limited to motor vehicles, which are set forth on the list attached hereto and made a part hereof, marked as "Attachment A", subject to the following terms and conditions:

> 1.  Enyart is fully familiar with each item herein conveyed and accepts same in an "as is, where is" condition, without warranty whether express or implied.

> 2.  Enyart shall be fully responsible for and pay any and all cost and expense involved directly or indirectly in the conveyance, transfer and titling of such items, including but not limited to sales or

transfer taxes, fees, and recording costs.

3. Enyart will transfer title to the listed equipment immediately upon delivery of this instrument, and shall be fully responsible for all liabilities attached thereto, except as set forth in paragraph 4, below, upon acceptance of this instrument.

4. Enyart acknowledges that the items herein conveyed are jointly and/or severally subject to financing or other liens evidencing indebtedness owed thereon, and accepts such items subject to such liens. B&L will remain responsible for the payment of such indebtedness and will provide releases of such liens at such time as the indebtedness is paid and such releases are executed by the entities holding such liens. Enyart shall be responsible, at his own cost, for the fulfillment of all conditions of the financing documents relating to such liens and indebtedness, including but not limited to the providing of insurance thereon, excepting only the payment of such indebtedness. Enyart further agrees that he will execute any documents required by the entities holding liens for the transfer of titles to the equipment.

In August 1992, Mr. Enyart incorporated Bill Enyart and Sons Contracting, Inc. (Enyart Company) and used the B&L equipment to capitalize it and its operations.

On May 14, 1992, B&L signed a promissory note payable to Bank of Ashland in the principal amount of $900,000 at 8.75 percent interest per year (B&L's promissory note), which was to be paid in 36 installments of $28,528 that were to commence on June 13, 1992. Pursuant to the terms of B&L's promissory note, B&L gave a security interest to Bank of Ashland in (1) "the goods or property being purchased", (2) B&L's "deposit accounts and other rights to the payment of money", and (3) "other property" described in that note as "VARIOUS VEHICLES". B&L's promissory

note was signed on behalf of B&L by Ms. Griffiths as vice president, and Mr. Enyart as president, of B&L.

Notes to B&L's financial statements for the periods ended December 31, 1992 and 1991, indicated that B&L's long-term debt at the end of the period ended December 31, 1992, consisted of, inter alia, a balance of $742,299 with respect to B&L's promissory note.[2] Fyffe, Jones & Associates, PSC (Fyffe, Jones), conducted a review of those financial statements which consisted principally of inquiries of B&L personnel and analytical procedures applied to B&L's financial data. The review conducted by Fyffe, Jones was substantially more limited in scope than an audit conducted in accordance with generally accepted auditing standards.

Enyart Company filed a U.S. Corporation Income Tax Return, Form 1120, for 1992 (Enyart Company's return), which was signed by Mr. Enyart. In that return, Enyart Company reported that it placed the B&L equipment into service in 1992 and claimed a depreciation deduction with respect to that equipment. It calculated that claimed depreciation deduction by using a cost basis of slightly over $300,000.

---

[2]The notes to B&L's financial statements for the periods ended Dec. 31, 1992 and 1991, indicated that B&L had additional long-term debt at the end of 1992 consisting of (1) $17,213 of principal on a note payable to Bank of Ashland which was secured by an unidentified truck and (2) $100,002 of principal on a note payable to Bank of Ashland that was described in those notes to B&L's financial statements as a "renewable line of credit."

B&L issued a Form 1099-B to Mr. Enyart for 1992 that showed $50,000 of income relating to the sale to B&L of his B&L stock. B&L also issued a Form 1099-Misc to Mr. Enyart for 1992 that showed $300,000 of income, i.e., the value of the B&L equipment that it transferred to Mr. Enyart as consideration for Mr. Enyart's covenant.

Petitioners filed a joint U.S. Individual Income Tax Return, Form 1040, for 1992 (joint return), which was signed by Terry R. Fyffe (Mr. Fyffe) as paid return preparer. Petitioners reported the $50,000 that Mr. Enyart received for the sale of his B&L stock in Schedule D, Capital Gains and Losses (Schedule D), of their joint return. Petitioners did not report as ordinary income in their joint return the $300,000 worth of B&L equipment that B&L transferred to Mr. Enyart during 1992 for Mr. Enyart's covenant. Instead, petitioners attached Form 6252, Installment Sale Income (Form 6252), to that return. Petitioners reported in Form 6252 the $300,000 value of the B&L equipment as the selling price of certain unidentified property which they claimed was sold on the installment method. Petitioners indicated in Form 6252 that the unidentified property which they claimed was sold on the installment method was acquired on January 1, 1983, and sold on August 31, 1992. Petitioners claimed no basis in Form 6252 for that property. Petitioners claimed in Form 6252 that they received $20,000 during 1992 with respect to the sale of the

unidentified property claimed to have been sold on the install-ment method and that their installment sale income for 1992 equaled $20,000.  The $20,000 of installment sale income claimed in Form 6252 was then reported as "Section 1231 gain from in-stallment sales from Form 6252" in Form 4797, Sales of Business Property, which petitioners attached to their joint return and as "Gain from Form 4797" in Schedule D of that return.

In the notice of deficiency (notice) issued to petitioners for the year at issue, respondent determined that Mr. Enyart received from B&L as consideration for Mr. Enyart's covenant the B&L equipment valued at $300,000.  Consequently, respondent determined in the notice to increase petitioners' taxable income for 1992 by $300,000.[3]  Respondent further determined in the notice that petitioners are liable for 1992 for the accuracy-related penalty under section 6662(a).

Petitioners bear the burden of proving that the determina-tions in the notice are erroneous.  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  That this case was submit-ted fully stipulated does not change that burden or the effect of a failure of proof.  See Rule 122(b); <u>Borchers v. Commissioner</u>, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

---

[3]As a correlative determination, respondent eliminated the $20,000 of capital gain that petitioners reported in Schedule D of their joint return as "Gain from Form 4797" (i.e., "Section 1231 gain from installment sales from Form 6252").  Respondent also made other correlative determinations.

We turn first to the tax consequences for the year at issue that are attributable to Mr. Enyart's receipt of the B&L equipment in return for his covenant not to compete with B&L.[4]  As framed by petitioners in both their opening and reply briefs, the issue that we must decide with respect to Mr. Enyart's covenant is:

> What amount must Petitioners report as gross income for various equipment received pursuant to a covenant not to compete agreement wherein Petitioners received the "right to use" such equipment that was 100% encumbered by financing for which Petitioners were not liable?

Having so framed the issue in this case relating to the B&L equipment, most of petitioners' opening and reply briefs nonetheless advance contentions and arguments in support of petitioners' position that Mr. Enyart did not constructively receive the B&L equipment during the year at issue within the meaning of section 1.451-2(a), Income Tax Regs.  According to petitioners,

> the mere receipt of the [B&L] equipment transferred pursuant to the covenant not to compete which was encumbered by substantial debt for which Petitioners were not liable constitutes a substantial restriction thereby disallowing the envokement [sic] of the constructive receipt doctrine.

The constructive receipt doctrine addresses when income, although not actually reduced to a taxpayer's possession, is constructively received by the taxpayer.  See sec. 1.451-2(a),

---

[4]Petitioners concede that any income that they have for the year at issue which is attributable to the B&L equipment is ordinary income, and not capital gain as reported in their joint return.

Income Tax Regs. Petitioners rely on the portion of section 1.451-2(a), Income Tax Regs., which provides that "income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." Id.

In the instant case, the parties disagree over whether during 1992 Mr. Enyart received ownership of the B&L equipment as contended by respondent or received only the right to use that equipment as contended by petitioners. The constructive receipt doctrine does not control resolution of that disagreement. Nor does that doctrine govern resolution of the parties' dispute over the value of what Mr. Enyart received during the year at issue in return for his covenant not to compete with B&L.[5]

---

[5]According to petitioners' reply brief, "the real issue for the court to decide is how to value the receipt of this [B&L] equipment given the amount of liens encumbering the property at such time" as B&L transferred that equipment to Mr. Enyart. Petitioners have not, however, presented any evidence and make no argument about their position as to what the value of the B&L equipment that Mr. Enyart received during 1992 is or the amount of ordinary income that they have for that year as a result of B&L's transfer during that year of the B&L equipment to Mr. Enyart. Petitioners merely state in their opening brief: "Under the matching principle, petitioners reported the value of the [B&L] equipment from a timing perspective with the amortization deduction taken by B&L." In their reply brief, petitioners further state that they

> reported the receipt of the [B&L] equipment in a manner consistent with the related amortization deduction taken by B&L with whom petitioner negotiated the covenant not to compete. This method was chosen as Petitioner did not know how to value the receipt of the equipment under this set of facts and there appeared to be no statutory or case law on point.

Petitioners advance a number of contentions to support their position that during the year at issue Mr. Enyart received only the right to use the B&L equipment, including the following: (1) The B&L equipment was subject to "virtually 100% financing" at the time it was transferred to Mr. Enyart; (2) the agreement states "that Petitioners shall have use of such [B&L] equipment until the financed amounts have been paid by B&L"; (3) B&L "was in a dire financial position and its ability to pay off the substantial amount of debt encumbering the equipment was in grave question"; and (4) "there was a realistic possibility that B&L would be unable to make the payments without the bank actually taking repossession of the equipment leaving petitioners without the equipment that was transferred pursuant to the agreement." The record does not support the foregoing contentions of petitioners.

The agreement states that at the time the B&L equipment was transferred to Mr. Enyart it was subject to some unspecified amount of liens; it does not state, as petitioners contend, that that equipment was subject to "virtually 100% financing". Furthermore, contrary to petitioners' contention, the agreement provides that only if the lending institutions holding the liens to which the B&L equipment was subject objected to the transfer by B&L of that equipment (or any part thereof) to Mr. Enyart, so that such a transfer by B&L could not be effected, was Mr. Enyart

to "have the use of such equipment, by appropriate lease or other reasonable method, until the financed amounts shall have been paid by B&L and releases of lien secured, at which time the equipment shall be transferred to ENYART". There is nothing in the record that shows that any lending institution holding a lien on the B&L equipment objected to the transfer by B&L of such equipment to Mr. Enyart. Nor does the record establish that B&L's transfer of the B&L equipment to Mr. Enyart could not have been, and was not, effected during the year at issue. To the contrary, the bill of sale and conveyance effected during that year the transfer by B&L to Mr. Enyart of the B&L equipment and did not merely grant Mr. Enyart the right to use that equipment. The bill of sale and conveyance provided in pertinent part:

> FOR VALUE RECEIVED, B&L * * * hereby BARGAINS, SELLS, CONVEYS, ASSIGNS and TRANSFERS unto William R. Enyart * * * all items of [the B&L] equipment * * * subject to the following terms and conditions:
>
>    *      *      *      *      *      *      *
>
> 4. Enyart acknowledges that the items herein conveyed are jointly and/or severally subject to financing or other liens evidencing indebtedness owed thereon, and accepts such items subject to such liens. B&L will remain responsible for the payment of such indebtedness and will provide releases of such liens at such time as the indebtedness is paid and such releases are executed by the entities holding such liens. Enyart shall be responsible, at his own cost, for the fulfillment of all conditions of the financing documents relating to such liens and indebtedness, including but not limited to the providing of insurance thereon, excepting only the payment of such indebtedness. Enyart further agrees that he will

execute any documents required by the entities
holding liens for the transfer of titles to the
equipment.

The record also shows that during the year at issue B&L was able to pay off, as they fell due, installments of B&L's promissory note which might have encumbered the B&L equipment.[6]  In this connection, B&L signed the B&L promissory note payable to Bank of Ashland around mid-May 1992.  That note was in the principal amount of $900,000 and bore interest at 8.75 percent per year, which was to be paid in 36 installments of $28,528 that were to commence on June 13, 1992.  The notes to B&L's financial statements for the periods ended December 31, 1992 and 1991, show that at the end of 1992 the balance remaining on the B&L promissory note was $742,299.  Thus, the record establishes that at least during 1992, the year at issue, B&L had the ability to, and did, satisfy its obligations under the B&L promissory note to pay the monthly installments of principal and interest due under that note.  On the record before us, we reject petitioners' assertions that B&L "was in a dire financial position and its ability to pay off the substantial amount of debt encumbering the equipment was in grave question" and that "there was a realistic possibility

---

[6]Although the B&L promissory note states that B&L gave a security interest to Bank of Ashland in, inter alia, goods or property that B&L was purchasing and various vehicles, it is not clear from that note or the remainder of the record whether some or all of the B&L equipment was included within such goods, property, and vehicles.

that B&L would be unable to make the payments [under the B&L promissory note] without the bank actually taking repossession of the [B&L] equipment leaving petitioners without the equipment that was transferred pursuant to the agreement."

Based on our examination of the entire record before us, we find that petitioners have failed to establish that B&L transferred to Mr. Enyart during the year at issue only the right to use, and not ownership of, the B&L equipment.[7] On that record, we further find that petitioners have failed to establish that the value of that equipment was less than $300,000, the value placed on that equipment by the agreement between B&L and Mr. Enyart. Accordingly, we sustain respondent's determination to increase petitioners' taxable income for the year at issue by $300,000.

We turn now to respondent's determination that petitioners are liable for 1992 for the accuracy-related penalty under section 6662(a). Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment of tax resulting from a substantial understatement of income tax. An understatement is equal to the excess of the amount of tax required to be

---

[7]It is significant that during the year at issue Mr. Enyart used the B&L equipment to capitalize Enyart Company and its operations. Mr. Enyart thus exercised during the year at issue dominion and control over the B&L equipment. It is also noteworthy that Enyart Company claimed in its tax return for 1992 a depreciation deduction with respect to the B&L equipment which was based upon a cost basis of slightly over $300,000.

shown in the tax return over the amount of tax shown in the tax return, see sec. 6662(d)(2)(A), and is substantial in the case of an individual if it exceeds the greater of 10 percent of the tax required to be shown or $5,000, see sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith. See sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. See sec. 1.6664-4(b)(1), Income Tax Regs. In the case of claimed reliance on the accountant who prepared the taxpayer's tax return, the taxpayer must establish that correct information was provided to the accountant and that the item incorrectly claimed or reported in the return was the result of the accountant's error. See Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978).

Petitioners argue that there was no substantial understatement of income tax for 1992 and that therefore they are not liable for that penalty. As a result of our holding that petitioners' taxable income for 1992 is to be increased by $300,000, we reject that argument.

Petitioners argue in the alternative that respondent's determination under section 6662(a) is wrong because they acted in good faith and with reasonable cause in reporting only $20,000 of capital gain in their joint return for the year at issue with respect to Mr. Enyart's receipt during that year of the B&L equipment. To support that alternative argument, petitioners contend (1) that there was no statutory or case law to guide them in reporting Mr. Enyart's receipt of the B&L equipment as consideration for Mr. Enyart's covenant and (2) that they relied on Mr. Fyffe to prepare their joint return. On the record before us, we reject petitioners' alternative position under section 6662(a).

Gross income includes the fair market value of property received in payment for services. See sec. 1.61-2(d)(1), Income Tax Regs. We have found that "Amounts paid by a purchaser to a seller for a covenant not to compete are ordinary income to the seller since they are tantamount to payments for services." Schmitz v. Commissioner, 51 T.C. 306, 313 (1968), affd. 457 F.2d 1022 (9th Cir. 1972). See generally Montesi v. Commissioner, 340 F.2d 97, 100 (6th Cir. 1965), affg. 40 T.C. 511 (1963); Schaefer v. Commissioner, 105 T.C. 227, 231-232 (1995). We have found that petitioners have failed to show that the value of the B&L equipment which B&L transferred to Mr. Enyart during the year at issue was less than $300,000. On the record before us, we reject petitioners' contention that there was no statutory or case law

to guide them in determining the tax treatment of Mr. Enyart's receipt of the B&L equipment in exchange for his covenant not to compete with B&L.

As for petitioners' claimed reliance on Mr. Fyffe, on the instant record, we reject that claim. Petitioners have failed to show what information they provided to Mr. Fyffe in connection with his preparation of their joint return. In fact, the record is devoid of any evidence regarding the preparation of that return and petitioners' claimed reliance on Mr. Fyffe.

Based on our examination of the entire record before us, we find that petitioners have failed to establish that they acted with reasonable cause and in good faith in taking the position reflected in their joint return with respect to the B&L equipment. We further find on that record that petitioners have failed to establish any error in respondent's determination that they are liable for 1992 for the accuracy-related penalty under section 6662(a). Consequently, we sustain that determination.

We have considered all of the contentions and arguments of petitioners that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing and the concession of petitioners,

Decision will be entered for

respondent.