**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-102

UNITED STATES TAX COURT

TARA C. SINGHAL AND MADHU SINGHAL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11486-13S.                    Filed October 29, 2014.

<u>Russell M. Frandsen</u>, for petitioner.

<u>Michael W. Tan</u>, for respondent.

SUMMARY OPINION

CHIECHI, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursu-

_____

[1]Hereinafter, all section references are to the Internal Revenue Code (Code)
in effect for the year at issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

ant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in, an addition under section 6651(a)(1) to, and an accuracy-related penalty under section 6662(a) on petitioners' Federal income tax (tax) for their taxable year 2010 of $60,687, $769, and $12,137, respectively.

The issue remaining for decision for petitioners' taxable year 2010 is whether petitioners are liable for the accuracy-related penalty under section 6662(a). We hold that they are.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners resided in California at the time they filed the petition.

Petitioner Tara C. Singhal (Mr. Singhal), who holds a bachelor's degree in electrical engineering and a master's degree in systems engineering and is admitted to the California bar, worked as an engineer for several decades.

In 1999, Mr. Singhal formed a limited liability company (LLC), a so-called flowthrough entity for tax purposes, known as Internet Promise Group, LLC

(IPG).[2] For all relevant years, Mr. Singhal received Schedules K-1, Partner's Share of Income, Deductions, Credits, etc. (Schedule K-1), from IPG that his accountant had prepared for him. He used those Schedules K-1 in determining what to report in the tax returns that he filed for all relevant years.[3]

In 2009, Mr. Singhal formed another LLC known as Man Machine Interface Technologies, LLC (MMIT), another flowthrough entity, to serve as a vehicle to sell one of his inventions. During 2010, the year at issue, Mr. Singhal and Ms. Singhal owned 98% and 2% interests, respectively, in MMIT. In 2010, Mr. Singhal sold a patent (patent sale) through MMIT. MMIT realized $553,750 of long-term capital gain from the patent sale.

Mr. Singhal retained a certified public accountant, Paul Gray (Mr. Gray), to prepare, and Mr. Gray prepared, for MMIT for the taxable year 2010 Form 1065, U.S. Return of Partnership Income (2010 Form 1065), including respective Schedules K-1 for Mr. Singhal and Ms. Singhal, the owners of MMIT. In the 2010 Form 1065, MMIT reported the $553,750 in long-term capital gain that it had

---

[2]The record does not establish whether petitioner Madhu Singhal (Ms. Singhal) had an ownership interest in IPG.

[3]The record does not establish whether the Schedules K-1 from IPG were correct or whether Mr. Singhal properly used those schedules when he reported the flowthrough items from IPG in his tax returns for all relevant years.

realized in 2010 from the patent sale. On September 15, 2011, MMIT filed the 2010 Form 1065.

Also on September 15, 2011, Mr. Gray sent identical letters (September 15, 2011 letter) to Mr. Singhal and Ms. Singhal. Mr. Gray attached MMIT's Schedule K-1 for Mr. Singhal (Mr. Singhal's K-1) to the September 15, 2011 letter that he sent to him and MMIT's Schedule K-1 for Ms. Singhal (Ms. Singhal's K-1) to the September 15, 2011 letter that he sent to her. Mr. Singhal and Ms. Singhal received their respective September 15, 2011 letters and the attachments to those letters several days after Mr. Gray sent those letters and those attachments to them.

Mr. Gray's September 15, 2011 letter to each petitioner stated:

> Enclosed is your 2010 Schedule K-1 (Form 1065) Partner's Share of Income, Deductions, Credits, Etc. from MAN MACHINE INTER-FACE TECHNOLOGIES, LLC. This information reflects the amounts you need to complete your income tax return. The amounts shown are your distributive share of partnership tax items to be reported on your tax return, and may not correspond to actual distributions you have received during the year. This information is included in the Partnership's 2010 Federal Return of Partnership Income that was filed with the Internal Revenue Service.
>
> If you have any questions concerning this information, please contact us immediately.

Mr. Singhal's K-1 and Ms. Singhal's K-1 reflected the following in part III as the "Partner's Share of Current Year Income, Deductions, Credits, and Other Items":

| Tax Item | Mr. Singhal's K-1 | Ms. Singhal's K-1 |
| --- | --- | --- |
| Ordinary business income (loss) | ($22,380) | ($457) |
| Net long-term capital gain (loss) | 542,675 | 11,075 |
| Self-employment earnings (loss) | (22,380) | -- |
| Distributions | 85,137 | 1,738 |

On September 19, 2011, petitioners learned that their son had taken ill while visiting Mr. Singhal's country of birth, India. On October 4, 2011, petitioners traveled to India to be with their son and did not return to the United States until November 4, 2011.

After petitioners returned from India, Mr. Singhal prepared petitioners' tax return for their taxable year 2010 (2010 return).[4] Petitioners attached Schedule D, Capital Gains and Losses (Schedule D), to that return in which they reported "[n]et

---

[4]The only assistance that Mr. Gray provided petitioners in connection with the preparation of their 2010 return was to prepare the 2010 Form 1065, Mr. Singhal's K-1, and Ms. Singhal's K-1 and to send them identical September 15, 2011 letters to which he attached those respective schedules.

long-term capital gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1" of $120,215.[5]

Petitioners also attached Schedule E, Supplemental Income and Loss, to their 2010 return in which they reported the following as "Income or Loss From Partnerships and S Corporations" for IPG and MMIT:[6]

| Partnership | Tax Item | Amount |
|---|---|---|
| IPG | Nonpassive loss from Schedule K-1 | $106,846 |
| MMIT | Nonpassive loss from Schedule K-1 | 22,837 |

On November 6, 2011, two days after they returned to the United States from India, petitioners mailed their 2010 return to the Internal Revenue Service (Service). On November 9, 2011, the Service received and filed that return.[7]

---

[5]As discussed supra, Mr. Singhal's K-1 and Ms. Singhal's K-1 reflected "[n]et long-term capital gain (loss)" of $542,675 and $11,075, respectively, or a total of $553,750.

[6]The record does not establish the contents of the Schedule K-1 for IPG for taxable year 2010. As discussed supra, Mr. Singhal's K-1 and Ms. Singhal's K-1 for MMIT reflected "[o]rdinary business income (loss)" of ($22,380) and ($457), respectively, or a total of ($22,837).

[7]The Service had granted petitioners an extension of time until October 15, 2011, within which to file their 2010 return.

Respondent issued a notice of deficiency (notice) to petitioners with respect to their taxable year 2010. In that notice, respondent determined that the amount of petitioners' "SCHEDULE D/CAPITAL GAIN DIVIDENDS" from MMIT for their taxable year 2010 is $553,750. Respondent made that determination on the basis of "Information Reported to IRS *that differs from the amounts shown*" in petitioners' 2010 return. Respondent also determined in the notice that petitioners are liable for their taxable year 2010 for an addition to tax under section 6651(a)(1) and for an accuracy-related penalty under section 6662(a).

OPINION

The only issue remaining for decision is whether petitioners are liable for their taxable year 2010 for the accuracy-related penalty under section 6662(a). Section 6662(a) imposes an accuracy-related penalty of 20 percent of the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, (1) negligence or disregard of rules or regulations, sec. 6662(b)(1), or (2) a substantial understatement of tax, sec. 6662(b)(2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code. Sec. 6662(c). Negligence has also been defined as a failure to do what a reasonable person would do under the cir-

cumstances. <u>Leuhsler v. Commissioner</u>, 963 F.2d 907, 910 (6th Cir. 1992), <u>aff'g</u> T.C. Memo. 1991-179; <u>Antonides v. Commissioner</u>, 91 T.C. 686, 699 (1988), <u>aff'd</u>, 893 F.2d 656 (4th Cir. 1990). The term "negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

For purposes of section 6662(b)(2), an understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the return. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown in the tax return for that year or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances, including the taxpayer's efforts to assess the taxpayer's proper tax liability, the knowledge and experience of the taxpayer, and the taxpayer's reliance on the

advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of a professional may demonstrate reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. Id. In this connection, a taxpayer must demonstrate that the taxpayer's reliance on the advice of a professional concerning substantive tax law was objectively reasonable. Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), aff'g T.C. Memo. 1993-480. A taxpayer's reliance on the advice of a professional will be objectively reasonable only if the taxpayer has provided necessary and accurate information to the professional. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see also Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978).

Respondent bears the burden of production with respect to any penalty or addition to tax. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To satisfy respondent's burden of production, respondent must come forward with "sufficient evidence indicating that it is appropriate to impose" the penalty or addition to tax. See Higbee v. Commissioner, 116 T.C. at 446. Although respondent bears the burden of production with respect to any penalty or addition to tax, respondent "need not introduce evidence regarding reasonable cause * * * or similar provisions. * * * [T]he taxpayer bears the burden of proof with regard to

those issues." Id. Petitioners conceded the deficiency for their taxable year 2010 that respondent determined in the notice. On the record before us, we find that respondent has carried respondent's burden of production under section 7491(c).

It is respondent's position that petitioners are liable for their taxable year 2010 for the accuracy-related penalty because there is a substantial understatement of tax for that year under section 6662(b)(2). In their 2010 return, petitioners had reported "total tax" of $41. In the notice, respondent determined a deficiency of $60,687. We agree with respondent that there is a substantial understatement of tax for petitioners' taxable year 2010. See sec. 6662(d)(1) and (2)(A).

As we understand it, it is petitioners' principal position that they are not liable for their taxable year 2010 for the accuracy-related penalty under section 6662(a) because they "made a mistake of law in good faith" that was "reasonable". They also appear to argue that Mr. Singhal was so emotionally distraught about his son's health when he prepared petitioners' 2010 return that he was unable to prepare that return properly.

We address first what we understand to be petitioners' principal position. In support of that position, petitioners contend that they "understood the law to require the reporting of the distributions received from MMIT as income and not the

reporting of the full amount of the gain realized by MMIT."[8] According to peti-

tioners, their misunderstanding of the tax law was reasonable cause for, and

caused them to act in good faith with respect to, their underreporting their net

capital gain attributable to MMIT, which resulted in an underpayment for their

taxable year 2010.

On the record before us, we reject petitioners' principal position. Several

days after September 15, 2011, Mr. Singhal and Ms. Singhal received from Mr.

Gray identical September 15, 2011 letters in which he advised them in pertinent

part as follows:

> Enclosed is your 2010 Schedule K-1 (Form 1065) Partner's Share of
> Income, Deductions, Credits, Etc. from MAN MACHINE INTER-
> FACE TECHNOLOGIES, LLC. This information reflects the
> amounts you need to complete your income tax return. <u>The amounts
> shown are your distributive share of partnership tax items to be
> reported on your tax return, and may not correspond to actual distri-
> butions you have received during the year</u>. * * * [Emphasis added.]

Petitioners reported in their 2010 return all of the information reflected in

Mr. Singhal's K-1 and Ms. Singhal's K-1 except for the information relating to

---

[8]Contrary to petitioners' contention, the $120,215 that petitioners reported in Schedule D attached to their 2010 return as "[n]et long-term gain or (loss) from partnerships" is not equal to the total amount, i.e., $86,875, of the distributions that petitioners received from MMIT during 2010.

"[n]et long-term capital gain (loss)".[9]  At trial, the Court attempted to focus Mr. Singhal on petitioners' inconsistent reporting in their 2010 return of the information that MMIT reflected in Mr. Singhal's K-1 and Ms. Singhal's K-1 by asking him about Mr. Gray's September 15, 2011 letters.  The following exchange between the Court and Mr. Singhal took place:

> THE COURT:  Now, what does it mean to you when a letter to you and to your wife says, this information reflects the amounts you need to complete your income tax return?
>
> THE WITNESS:  To be truthful, I never read it.
>
> THE COURT:  You never read it?
>
> THE WITNESS:  Yes.

If Mr. Singhal in fact did not read Mr. Gray's September 15, 2011 letters, he failed to read the instructions that petitioners' certified public accountant who prepared the 2010 Form 1065 and Mr. Singhal's K-1 and Ms. Singhal's K-1 gave to petitioners in those letters regarding what needed to be reported in their 2010 return with respect to their respective ownership interests in MMIT.  A reasonable person would have read Mr. Gray's September 15, 2011 letters.

---

[9]The record does not establish whether petitioners reported in their 2010 return Mr. Singhal's distributive share of "[s]elf-employment earnings (loss)" reflected in Mr. Singhal's K-1.  Petitioners' 2010 return that is part of the record does not contain Schedule SE, Self-Employment Tax, in which that distributive share should have been reported.

If, contrary to his testimony, Mr. Singhal did read Mr. Gray's September 15, 2011 letters, he knew that "[t]he amounts shown [in Mr. Singhal's K-1 and Ms. Singhal's K-1] are your distributive share of partnership tax items to be reported on your tax return, and may not correspond to actual distributions you have received during the year." A reasonable person would not have ignored Mr. Gray's admonition in his September 15, 2011 letters when preparing his/her tax return.

On the record before us, we find that petitioners have failed to carry their burden of establishing that they "made a mistake of law in good faith" that was "reasonable".

We consider now petitioners' contention that Mr. Singhal was so emotionally distraught about his son's health at the time that he prepared petitioners' 2010 return that he was unable to prepare that return properly. We are sympathetic that petitioners' son was experiencing certain medical problems around the time petitioners' 2010 return was due and that petitioners were seriously concerned about their son's health. Nonetheless, on the record before us, we find that petitioners have failed to carry their burden of establishing that Mr. Singhal was so overwhelmed by the circumstances surrounding the health of petitioners' son that he was unable to understand and follow the instructions in Mr. Gray's September 15,

2011 letters. Those letters instructed petitioners to report in their 2010 return all of the information reflected in Mr. Singhal's K-1 and Ms. Singhal's K-1, even though that information "may not correspond to actual distributions you have received during the year [2010]". Indeed, petitioners reported in their 2010 return, which Mr. Singhal prepared, all of the information reflected in Mr. Singhal's K-1 and Ms. Singhal's K-1 except for the information relating to "[n]et long-term capital gain (loss)".[10]

On the record before us, we find that petitioners have failed to carry their burden of establishing that there was reasonable cause for, and that they acted in good faith with respect to, their underpayment for their taxable year 2010. On that record, we find that petitioners have failed to carry their burden of establishing that they are not liable for their taxable year 2010 for the accuracy-related penalty because of a substantial understatement of tax under section 6662(b)(2).[11]

---

[10]See supra note 9.

[11]Respondent argues in the alternative that petitioners are liable for their taxable year 2010 for the accuracy-related penalty under sec. 6662(a) because of negligence under sec. 6662(b)(1). Because we have already held that petitioners are liable under sec. 6662(a) because of a substantial understatement of tax under sec. 6662(b)(2), we need not reach that alternative argument.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.