T.C. Memo. 1999-138

UNITED STATES TAX COURT

PAUL F. DICKIE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

PAUL F. DICKIE AND SHERRY L. DICKIE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9614-98, 9615-98.      Filed April 26, 1999.

<u>Leslie A. Anderson</u>, for petitioners.

<u>Gail K. Gibson</u>, for respondent.

MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.  All section references are to the Internal Revenue Code in effect for the

years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined the following deficiencies and accuracy-related penalties:

| Year | Deficiency | Accuracy-related Penalty Sec. 6662(a) |
|------|-----------|----------------------------------------|
| 1994 | $1,095 | $219 |
| 1995 | 1,050 | 210 |

The issues we must decide are: (1) Whether the activity of petitioner Paul F. Dickie (petitioner) as a musician was an activity "not engaged in for profit" within the meaning of section 183 for the taxable years at issue, (2) whether petitioner is entitled to a medical expense deduction under section 213 for taxable year 1994, and (3) whether petitioners are liable for accuracy-related penalties for the taxable years at issue.

Some of the facts have been stipulated are so found. Petitioner filed a joint income tax return for 1994 in his name and that of his deceased wife, Saundra G. Dickie (Saundra). Petitioner resided in Prior Lake, Minnesota, at the time his petition was filed. Petitioner filed a joint income tax return for 1995 with his wife Sherry L. Dickie (Sherry). Petitioner and Sherry resided in Prior Lake, Minnesota, at the time their petition was filed.

During 1994 and 1995, petitioner was employed full time as a quality engineer with Illbruck, Inc. (Illbruck). Petitioner's 1994 and 1995 Forms W-2, Wage and Tax Statement, from Illbruck, showed that petitioner earned wages in the amounts of $52,169.45 and $49,046.00, respectively. On petitioner's 1994 Form 1040, U.S. Individual Income Tax Return, petitioner reported on line 7, wages, salaries, tips, etc. in the amount of $52,169. Sherry's 1995 Form W-2 from Speak The Word Church and World Outreach showed that she earned $29,355.28. On petitioners' 1995 Form 1040, U.S. Individual Income Tax Return, petitioners reported on line 7, wages, salaries, tips, etc. in the amount of $78,401.

During 1994, petitioner was married to Saundra. In late February or early March 1994, after about 18 months in remission, Saundra's breast cancer recurred. Petitioner and Saundra sought alternative medical therapy. In 1994, petitioner and Saundra paid Natural Wellness $3,018 for consultation and dietary "supplements". Natural Wellness was operated by Frank Charles. Saundra died in August 1994.

Petitioner also is a musician. He began taking music lessons when he was about 8 years old. Petitioner plays the trumpet, keyboards, and guitar. During the taxable years at issue, petitioner played electric and acoustic guitars with the choir of Speak the Word Church and World Outreach (the Church) located in Golden Valley, Minnesota. The choir, known as

Positive Reaction, consisted of approximately 30 members, which included 18 singers, 8 musicians, and 4 or 5 technical assistants. On average, petitioner claimed he rehearsed with Positive Reaction approximately 8 to 10 hours per week, and by himself in his home studio approximately 5 to 6 hours per week. Petitioner had no contractual relationship with Positive Reaction or the Church.

Positive Reaction's repertoire consisted solely of contemporary Christian music, "some rock, some country, some rhythm and blues." Positive Reaction has performed in a number of places including Orlando, Florida, Tulsa, Oklahoma, and areas in the Twin Cities. The group played "mostly" in Golden Valley. Positive Reaction has received local and national media attention.

Positive Reaction recorded its music through High Praise Productions (High Praise), a recording studio located at the same address as the Church. Also, High Praise marketed Positive Reaction's music through Christian bookstores, catalogues, radio, and television. High Praise produced three compact discs on which petitioner was acknowledged as a contributing guitarist. Petitioner also was acknowledged as a contributing guitarist on a compact disc with a 1996 copyright date, featuring Kevin Stevens and copyrighted by Fresh Rain Music.

On the 1994 and 1995 Schedules C, Profit or Loss From Business, petitioner identified his principal business or profession as musician, and listed his business name as "Positive Reaction". For 1994 and 1995, petitioner reported $600 and zero in gross income, $4,286 and $6,925 in expenses, and a net loss of $3,686 and $6,925, respectively.

On the 1994 Schedule C for Shaklee Sales, petitioner claimed $3,018 in expenses for supplies and a net loss for that business of $10,663.

In the notices of deficiency, respondent determined that petitioner's activity as a musician was not an activity engaged in for profit under section 183 for both years, allowed $600 of expenses up to the amount of income as a Schedule A deduction for 1994, disallowed the $3,018 in expenses for supplies claimed in 1994 because it had not been established that they were ordinary and necessary business expenses, made automatic adjustments, and imposed accuracy-related penalties for both years.

Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Generally, section 183(a) disallows any deductions attributable to activities not engaged in for profit except as provided under section 183(b). An activity not engaged in for profit means any activity other than one with respect to which deductions are

allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212.  Sec. 183(c).

The taxpayer must show that he engaged in the activity with the actual and honest objective of making a profit.  Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. The taxpayer's expectation of a profit need not be reasonable, but it must be a bona fide expectation.  Sec. 1.183-2(a), Income Tax Regs.  Whether a taxpayer is engaged in an activity with the requisite profit objective is determined from all the facts and circumstances.  Dreicer v. Commissioner, supra at 645.  Greater weight is given to objective facts than to the taxpayer's mere statement of his intent.  Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of relevant factors to be considered in deciding whether an activity is engaged in for profit.  These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount

of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.  These factors are not applicable or appropriate in every case.  Abramson v. Commissioner, 86 T.C. 360, 371 (1986).

Petitioner carried on his music activity in a nonbusiness like manner.  Petitioner claimed various expenses including car and truck expenses, depreciation, and supplies.  Petitioner admitted that he failed to maintain any books or records, or a separate business bank account.  There also is no evidence that petitioner carried on the activity in a manner similar to other activities of the same nature which are profitable.  Sec. 1.183-2(b)(1), Income Tax Regs.

Although petitioner testified that he attempted to promote his music activity by handing out compact discs, on which he was listed as a contributing guitarist, to some people in the music industry, petitioner did little else to promote or advertise his availability as a musician for hire.  Indeed, petitioner admitted that he did not advertise in the local telephone directory, distribute flyers, or obtain business cards.  Petitioner was not a member of any musicians' union.  Petitioner made no reasonable efforts to gain recognition as a musician playing Christian music for hire.

There is no credible evidence that petitioner consulted with experts in the music industry in an effort to further his music career. Sec. 1.183-2(b)(2), Income Tax Regs. We also note that petitioner expected his musical instruments to depreciate in value. Sec. 1.183-2(b)(2), (4), Income Tax Regs.

Notwithstanding petitioner's contention that he expended a fair amount of time and effort in his music activity, we note that petitioner was employed full time as an engineer, operated a sales business in 1994, rendered personal care to Saundra who was fatally ill in 1994, and raised his children during the years in issue. We are not convinced that petitioner devoted as much time to his music activity as he claimed he did.

The record also does not establish that petitioner was successful in his music activity. For 1994 and 1995, petitioner reported losses in the amounts of $3,686 and $6,925, respectively. Although petitioner reported gross income in the amount of $600 in 1994, petitioner reported related expenses in the amount of $4,286. During 1994 and 1995, the Forms 1040 reported wages in the amounts of $52,169 and $78,401, respectively. This helps to persuade us that petitioner's music activity was only a hobby. Sec. 1.183-2((b)(8), Income Tax Regs.

We do not doubt petitioner's desire to "make it big enough in the music business to make that a full-time profession." However, viewing the record as a whole, we are satisfied that

petitioner's music activity was an activity not engaged in for profit within the meaning of section 183. Thus, respondent is sustained on this issue.

We must next decide whether petitioner is entitled to a deduction in the amount of $3,018 under section 213 for taxable year 1994. As stated above, petitioner claimed $3,018 in expenses for supplies attributed to his Shaklee Sales business in 1994. Petitioner concedes that he incorrectly claimed this amount as expenses for supplies. He argues that it should have been claimed as a medical expense deduction under section 213.

Section 213 allows a deduction for expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent. The taxpayer must substantiate any deductions claimed under section 213 by furnishing the name and address of each person to whom payment for medical expenses was made and the amount and date for each such payment. Sec. 1.213-1(h), Income Tax Regs. Moreover, the taxpayer must be prepared to substantiate any claimed deductions by furnishing statements or itemized invoices from the individual or entity to which payment for medical expenses was made. Sec. 1.213-1(h), Income Tax Regs. These statements or invoices should indicate the nature of the service rendered, and to or for whom rendered. Sec. 1.213-1(h), Income Tax Regs.

The parties stipulated that petitioner paid Natural Wellness $3,018.29 with 11 checks in 1994, which were put in evidence. Petitioner explained that this amount represented the cost of consultations and dietary supplements. Petitioner testified that Natural Wellness was operated by Frank Charles, a "naturopathic doctor" who practiced in Excelsior, Minnesota. Naturopathy is a system of treatment of disease emphasizing assistance to nature and sometimes including the use of natural medical substances such as herbs, vitamins, and salts, and certain physical means, such as manipulation and electrical treatment. Webster's Third New International Dictionary 1508 (unabridged) (1993).

Respondent argues that because the treatments provided through Natural Wellness were not prescribed by a medical doctor, and were not covered by an insurance company, the payments for such treatments are not deductible under section 213. Respondent on brief states that "it is reasonable to assume that the insurance company's refusal to pay for [Charles'] treatments reflects their [sic] informed opinion that his methods were not suitable or effective in the treatment of cancer."

We disagree with respondent's position. The deductibility of medical care payments under section 213 is not strictly limited to traditional medical procedures, but it includes payments made for the purpose of affecting any structure or

function of the body.  Sec. 213(d)(1)(A).  As this Court stated

in Fischer v. Commissioner, 50 T.C. 164, 174 (1968):

> The cases, the rulings, and the regulations make clear that
> whether a service for which an expenditure is made
> constitutes medical care will depend upon its therapeutic
> nature to the individual, and not upon the title of the
> person rendering the service, or whether the expense is
> "medical" to all persons, or the general nature of the
> institution in which the service is rendered.  [Fn. refs.
> omitted.]

This broad view of medical care allows medical expense deductions

for "nontraditional" medical care.  Cf. Crain v. Commissioner,

T.C. Memo. 1986-138; Tso v. Commissioner, T.C. Memo. 1980-399.

More importantly, section 213 does not preclude deduction of

amounts expended for medical care even though such care was not

prescribed by a medical doctor.

But we are not persuaded on this record that the entire

amount in issue was expended only for the medical care of

Saundra.  Using our best judgment, we allow petitioner to deduct

60 percent of the $3,018 or a total of $1,811 as medical expenses

under section 213 for the taxable year 1994.  Cohan v.

Commissioner, 39 F.2d 540 (2d Cir. 1930).

Finally, we must decide whether petitioners are liable for

accuracy-related penalties for 1994 and 1995.  Section 6662(a)

imposes an accuracy-related penalty in the amount of 20 percent

of the portion of an underpayment of tax attributable to

negligence or disregard of rules or regulations.  Sec. 6662(a)

and (b)(1).  Negligence is any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue laws.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Disregard includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

No penalty will be imposed with respect to any portion of any underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.  Sec. 6664(c).  Where the taxpayer claims reliance on an accountant who prepared the taxpayer's return, the taxpayer must establish that the correct information was provided to the accountant and that the item incorrectly claimed or reported in the return was the result of the accountant's error.  Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978); Enoch v. Commissioner, 57 T.C. 781, 803 (1972).

Petitioner did not keep any records of his purported music business and he did not have a separate bank account.  He did not carry on this activity in businesslike fashion, as we detailed above.  Other than asserting that he relied on the advice of his accountant, petitioner presented no testimony or other evidence

to establish that he provided his accountant with all of the necessary information to prepare properly his returns or that he received guidance from his accountant as to the propriety of the claimed deductions. Moreover, petitioner did not call his accountant as a witness to testify about the information petitioner provided him for calculating his Federal income tax liability. We cannot assume the testimony of the absent witness would have been favorable to petitioner. Rather, the normal inference is that it would have been unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). For the foregoing reasons, we conclude that petitioners are liable for accuracy-related penalties under section 6662(a) for 1994 and 1995.

Decisions will be entered

under Rule 155.