T.C. Summary Opinion 2003-101


UNITED STATES TAX COURT


GABE W. STEWART, JR., AND DORIS R. STEWART, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8253-00S.                    Filed July 24, 2003.


Gabe W. Stewart, Jr., and Doris R. Stewart, pro sese.

<u>Lorianne D. Masano</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 1996, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for 1996 in the amount of $21,486, as well as an accuracy-related penalty under section 6662(a) in the amount of $4,297.

After the parties' agreement at trial regarding the fair market value of a noncash charitable contribution of realty, the issues for decision are:

(1) Whether petitioners are entitled to a deduction for a noncash charitable contribution of personalty in excess of the amount allowed by respondent. We hold that they are not.

(2) Whether petitioners are liable for an accuracy-related penalty under section 6662(a). We hold that they are to the extent provided herein.

The adjustment relating to petitioners' long-term capital gain with respect to an installment sale is purely a mechanical matter, the resolution of which is dependent on the parties' agreement described above regarding the fair market value of certain realty.

## Background

Some of the facts have been stipulated, and they are so found. Petitioners resided in Panama City, Florida, at the time that their petition was filed with the Court.

### A. The Winter Haven Property

During 1996, petitioners were contacted by the Auburndale

Community Church (Community Church) about purchasing property petitioners owned in Winter Haven, Florida (Winter Haven property). The Winter Haven property consisted of a building and approximately one acre of land.

On October 16, 1996, David Collins (Mr. Collins), petitioners' real estate agent who managed the Winter Haven property, indicated by letter to petitioners that an appropriate asking price for the Winter Haven property would be "$185,000 to $200,000". Petitioners and Community Church subsequently agreed on a sales price of $200,000 for the Winter Haven property.

Prior to completing the sale with Community Church, petitioners met with their accountant, Edmund Nunez (Mr. Nunez), C.P.A. Petitioners provided Mr. Nunez with a copy of the letter from Mr. Collins. Mr. Nunez suggested to petitioners that the transaction with Community Church be structured as a part sale/part gift. Mr. Nunez specifically suggested that petitioners sell the Winter Haven property to Community Church for $100,000 and make a gift to Community Church of the remaining $100,000.

On December 5, 1996, petitioners and Community Church executed the part sale/part gift arrangement.

B. The Angler Motor Boat

During 1996, petitioners owned a 1982 21-foot Angler motor

boat with a 115-horsepower outboard motor and a boat trailer.[2] After petitioner Gabe Stewart (Mr. Stewart) experienced medical problems, petitioners decided to dispose of the boat. Petitioners were unsuccessful in their attempts to sell the boat.

On December 30, 1996, petitioners contributed the boat to The Salvation Army. Mr. Stewart testified that at the time petitioners donated the boat to The Salvation Army, "it was in mint condition" and ready for use. The receipt given to petitioners from The Salvation Army for their contribution listed the condition of the boat as "good". Petitioners did not obtain an appraisal for the boat.

On December 30, 1996, Mr. Arthur Morden (Mr. Morden), an employee of The Salvation Army for more than 25 years whose duties included obtaining appraisals for donated items, had the boat delivered to the owner of Paul's Repair (boat appraiser), a local boat and motor repair shop, to obtain an appraisal. Mr. Morden testified that he often used the boat appraiser because he would "try to give me his best and honest appraisal". After inspecting the boat, the boat appraiser determined that the boat had previously been sunk. The boat appraiser specifically indicated, among other things, that the boat had a rotten transom, rusty cables, and a locked-up motor. The boat appraiser

---

[2] The boat, motor, and trailer are herein collectively referred to as "the boat".

valued the boat at $500, with most of the value attributable to the trailer.

After obtaining the appraisal, The Salvation Army's local corps commander determined the sales price for the boat. The boat was subsequently sold by The Salvation Army for $500.

C.   Petitioners' Income Tax Return

On October 10, 1997, petitioners filed a Form 1040, U.S. Individual Income Tax Return, for 1996. On their 1996 return, petitioners claimed noncash charitable contributions of $100,000 for the Winter Haven property and $10,000 for the boat. Petitioners attached the second page of two Forms 8283, Noncash Charitable Contributions, to their 1996 return. The second page of the Form 8283 for the Winter Haven property listed the appraised fair market value as $200,000, specified the appraisal date as January 1, 1997, and was signed by the pastor of Community Church as the appraiser. The second page of the Form 8283 for the boat listed the fair market value as $10,000 and was not signed by an appraiser.

Petitioners' 1996 return was prepared by Mr. Nunez. Mr. Nunez had prepared petitioners' income tax returns for nearly 40 years. As previously noted, Mr. Nunez advised petitioners of the part sale/part gift arrangement with respect to the Winter Haven property. Mr. Nunez was not aware of the contribution of the boat until he obtained information from petitioners necessary to

prepare their 1996 return.  Petitioners signed but did not review the 1996 return as prepared by Mr. Nunez.

D.  <u>The Notice of Deficiency</u>

In the notice of deficiency, respondent determined that petitioners overstated the fair market value of their noncash charitable contributions.  In the notice, respondent determined that the fair market value of the Winter Haven property was $155,000 and that the fair market value of the boat was $500.  Thus, respondent disallowed $54,500 ($45,000 for the Winter Haven property and $9,500 for the boat) of petitioners' $110,000 noncash charitable contributions for 1996.[3]

<u>Discussion</u>

In general, the determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to show that the determinations are incorrect.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).[4]

A. <u>Charitable Contributions</u>

Section 170(a)(1) allows a deduction for charitable

---

[3]  At trial, petitioners and respondent agreed that the fair market value of the Winter Haven property was $183,000.  Accordingly, petitioners are allowed a charitable deduction with respect to the Winter Haven property in the amount of $83,000 ($183,000 fair market value less the $100,000 sales price).

[4]  Sec. 7491 does not apply in this case to shift the burden of proof to respondent because petitioners neither alleged that sec. 7491 was applicable nor established that they fully complied with the requirements of sec. 7491(a)(2).

contributions (as defined in section 170(c)) made within the taxable year. In general, the amount of a charitable contribution made in property other than money is the fair market value of the property at the time of the contribution. See sec. 1.170A-1(c)(1), Income Tax Regs. Fair market value is defined as the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts. See sec. 1.170A-1(c)(2), Income Tax Regs. Fair market value is a question of fact to be determined from the entire record. Skripak v. Commissioner, 84 T.C. 285, 320 (1985).

Under section 1.170A-13(c), Income Tax Regs., if a contributed item is valued in excess of $5,000, the donor must obtain a qualified appraisal for the contributed property, attach a fully completed appraisal summary to the Federal income tax return, and maintain reasonably detailed records containing a description of the property, the fair market value of the property at the time of the donation, the method used in determining the fair market value, and the cost or other basis.

A qualified appraisal shall include, inter alia, a description of the property in sufficient detail for a person who is not generally familiar with the type of property that was contributed, a description of the physical condition of the property, the qualifications of the qualified appraiser, the

method of valuation used to determine the fair market value, and the specific basis for the valuation. See sec. 1.170A-3(c)(3), Income Tax Regs. The appraisal summary shall include, inter alia, a description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property that was appraised is the property that was contributed, a brief summary of the physical condition of the property, the manner of acquisition, and the cost or other basis. See sec. 1.170A-13(c)(4), Income Tax Regs.

After the parties' agreement with respect to the fair market value of the Winter Haven property, the Court must decide whether petitioners are entitled to a charitable contribution for the boat in excess of $500.

Petitioners argue that the fair market value of the boat was $10,000 at the time that the contribution was made to The Salvation Army. Petitioners did not obtain an appraisal of the boat. Although Mr. Stewart testified as to the condition of the boat, petitioners were unable to offer any other persuasive evidence to aid in the valuation of the boat. We are not required to accept a taxpayer's uncorroborated testimony at face value. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Regardless, Mr. Stewart's testimony, which was uncorroborated, does not sufficiently establish the fair market value of the boat at the time of the contribution.

The boat appraiser, a disinterested third party who provided appraisals for The Salvation Army, inspected the boat and offered a detail description of the boat's condition. After his inspection, the boat appraiser valued the boat at $500. After the appraisal, the boat was subsequently sold by The Salvation Army for $500.

The record does not establish that the value of the boat was greater than $500 at the time contributed by petitioners to The Salvation Army. Accordingly, we hold that petitioners are not entitled to a charitable deduction with respect to the boat in excess of the amount allowed by respondent.

B. Section 6662(a)[5]

The last issue for decision is whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for the year in issue. Section 6662(a) and (b)(1) provides that if any portion of an underpayment of tax is attributable to negligence or disregard of rules or regulations, then there shall be added to the tax an amount equal to 20 percent of the amount of the underpayment that is so

_____

[5] Respondent has satisfied his burden of production under sec. 7491(c) with respect to the accuracy-related penalty under sec. 6662(a) and (b)(1). Sec. 7491(c); Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Accordingly, petitioners bear the burden of proving that the penalty is inapplicable. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933); Higbee v. Commissioner, supra.

attributable.  The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c); see sec. 1.6662-3(b)(2), Income Tax Regs.

Negligence often takes the form of an understatement of income or an overstatement of deductions.  See Healey v. Commissioner, T.C. Memo. 1996-260, and cases cited therein.  Understatement of income or overstatement of deductions may reflect the inadequacy of the taxpayer's records, which is, of itself, a basis for sustaining the accuracy-related penalty.  In this regard, we observe that a taxpayer is required to maintain records sufficient to establish all items of income, deduction, and credit that are required to be shown on the taxpayer's tax return.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.; see also Lysek v. Commissioner, 583 F.2d 1088, 1094 (9th Cir. 1978), affg. T.C. Memo. 1975-293; Crocker v. Commissioner, 92 T.C. 899, 916 (1989); Schroeder v. Commissioner, 40 T.C. 30, 34 (1963); sec. 1.6662-3(b)(1), Income Tax Regs.  Additionally, failure to keep adequate records is evidence of intentional disregard of the regulations.  See Crocker v. Commissioner, supra at 917.

On the other hand, no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that

the taxpayer acted in good faith with respect to such portion. See sec. 6664(c).  The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.

As a general rule, the duty of filing accurate tax returns cannot be avoided by placing responsibility on an agent.  See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Pritchett v. Commissioner, 63 T.C. 149, 174 (1974).  However, a taxpayer may avoid the accuracy-related penalty by showing that his or her reliance on the advice of a professional, such as a commercial return preparer, was reasonable and in good faith. Sec. 1.6664-4(b)(1), Income Tax Regs.  Specifically, the taxpayer must establish that complete and correct information was provided to the return preparer and that the item incorrectly claimed or reported on the return was the result of the preparer's error. See Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978).

With regard to the noncash charitable contributions made by petitioners, section 1.170A-13, Income Tax Regs., provides specific recordkeeping and return requirements.  While strict compliance with the recordkeeping and return requirements is not necessary, we have required that taxpayers must substantially comply with the regulation in order to claim the deduction for a charitable contribution.  See Hewitt v. Commissioner, 109 T.C.

258 (1997), affd. 166 F.3d 332 (4th Cir. 1998). In the present case, the record establishes that petitioners did not comply, or substantially comply, with the recordkeeping and return requirements with respect to either the contribution of the Winter Haven property or the boat.

However, petitioners relied on Mr. Nunez to prepare their 1996 income tax return. Mr. Nunez suggested to petitioners that the transaction with Community Church be structured as a part sale/part gift. We are satisfied that petitioners in good faith reasonably relied on the advice of Mr. Nunez to properly account for the transaction between petitioners and Community Church with regard to the Winter Haven property. Accordingly, we conclude that the accuracy-related penalty with regard to the underpayment attributable to the Winter Haven property should not be imposed.

In contrast, petitioners did not seek the advice of Mr. Nunez with respect to the contribution of the boat. Thus, petitioners did not reasonably rely on the advice of a return preparer with respect to the boat contribution. Likewise, petitioners offered no evidence that their disregard of the recordkeeping and reporting requirements with respect to the boat was reasonable. Accordingly, we sustain respondent's imposition of the accuracy-related penalty with regard to the underpayment attributable to the charitable contribution of the boat.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.